NATHANIEL BRITTON v. LEVI UPDIKE and wife, ELIZABETH UPDIKE, widow, and SAMUEL UPDIKE and CORNELIUS GROVER, Adm'rs of WILLIAM UPDIKE, deceased, JOHN W. DYE, THOMAS GRIGGS, WM. MERSHON and WM. BAYLES.

Where mortgaged premises are sold by the mortgagor in parcels to various purchasers, at different times, there can be no contribution among the purchasers. The older purchasers and their shares are exempt, until the younger ones and their shares shall have responded to the claim; and they must answer, respectively, in the order in which they have purchased, beginning with the youngest purchaser and ending with the oldest.

[Britton v. Updike et al.]

This order is to be observed, unless there are peculiar circumstances affecting the rights of parties, to change the rule.

*Hardenburgh*, for complainant.

*Hamilton*, for Griggs, Mershon and Bayles, three of the defts.

THE CHANCELLOR. The bill is for the foreclosure and sale of mortgaged premises in the county of Middlesex. There is no dispute as to the mortgage itself; but the mortgagors having sold the property in different parcels since the mortgage given, there has been a difference of opinion as to the liability of the parties, and the manner in which the money shall be raised; and to this point the attention of the court has been directed by the counsel.

It appears, that in 1809, Levi Updike and wife, and William Updike (now deceased) and his wife, made a mortgage to the complainant, on one hundred and sixty-nine acres of land, in the township of South-Brunswick, and lying south of a certain stream of water, known by the name of Drinking Brook. The amount to be secured by the mortgage was one thousand nine hundred and eighty-four dollars and fourteen cents.

On the seventh of March, 1814, the mortgagors sold and conveyed to William Mershon a lot of land, in which was included about nine acres of the mortgaged premises.

On the same seventh of March, 1814, they sold and conveyed to William Bayles a lot of land, in which was included about twelve acres of the mortgaged premises.

On the thirtieth of April, 1816, they sold and conveyed to Thomas Griggs another lot of land, in which was included about fifty-two acres of the mortgaged premises.

The residue of the premises remained in the possession of the Updikes, as is stated by one of the witnesses, for about two years after these sales, and then came into the possession of John W. Dye, who still holds it. This defendant has put in no answer, and suffered a decree pro confesso to be entered against him. By what title he claims right to the possession of the premises does not appear.

Under this state of facts, if there be no peculiar circumstances affecting the case, the rights of the parties can admit of no dispute. The part of the property that remains in the hands of the mortgagors, or of Dye, if he be the owner, is first liable to pay the mortgage debt. If it still belong to the mortgagors, then it is surely just that it should bear the burden of the mortgage debt, before the other parts of the property, which have been sold for a valuable consideration, are called on to contribute. If it has been sold to Dye, he " *sits in the seat of his grantor*," and takes it with the incumbrance as it existed in his hands.

If this residue be insufficient to make the money due, then the part sold to Thomas Griggs is next liable, and must make up the deficiency. When Griggs purchased, both Mershon and Bayles were in possession of parts of the property by purchase from the mortgagors, for a valuable consideration ; and these are to be exempted until all the remainder is appropriated to the payment of the debt.

If there should still be a deficiency, the shares of Bayles and Mershon are next liable. Their titles are of the same date. They stand *in equali jure*, and must contribute rateably, according to the proportions held by each of them.

The rule on this subject is well established, and has been repeatedly recognized in the courts of New-York, as well as our own state: *Clowes* v. *Dickenson*, 5 *John. Chan. R.* 235 ; *Gill* v. *Lyon*, 1 *John. Chan. R.* 447 ; *Ex'rs of Clymer* v. *Ridgeway et al., Opin. of Ch. Williamson, Oct.* 1827. Other cases might be added, if there were a doubt upon the subject.

The counsel of the complainant appeared to think that the present was a case of contribution, and that all the different purchasers stood before the court *in equali jure*. This would be so, if they had acquired their rights at one and the same time ; but having purchased in succession, there can be no contribution among them. The older purchasers and their shares are exempt, until the younger ones and their shares shall have responded to the claim ; and they must answer, respectively, in the order in which they have purchased, beginning with the youngest pur-

chaser and ending with the oldest.    This is the order to be observed, unless there are peculiar circumstances affecting the rights of parties so as to break in upon the rule.

The defendants, in their several answers, claim an entire exemption from the operation of the mortgage, because they purchased for a valuable consideration, and paid the money under the full assurance given by the mortgagors, that it should be applied to extinguish so much of the mortgage debt.    These allegations, not being responsive to the bill, or supported by any kind of proof, cannot be received as evidence.    The replication has put them directly in issue, and they are not proved.    Even if they were proved, it would not avail the defendants, unless they could show farther, that the money had actually been paid, and paid too in discharge and release of the property they had severally purchased.

Bayles states that he actually paid to the complainant himself seven hundred and fifty-eight dollars and twenty-six cents, being part of the purchase money, and more than the value of the twelve acres of the mortgaged premises which he purchased, and that it was endorsed on the mortgage and passed to the credit of the mortgagors in different sums, and was accepted by the complainant in full satisfaction and discharge of so much of the mortgaged premises as he had purchased, and in release thereof.    But the evidence does not sustain the allegation.    It appears by the bond, that the sum of seven hundred and fifty-eight dollars and twenty-six cents was actually received by the mortgagee, and that it was passed to the credit of the mortgagors in different sums, as he states; but it does not appear by the endorsement, that the money was paid in release of the Bayles lot, or that it was even paid by Bayles.    On the contrary, it is endorsed as having been paid by William and Levi Updike, the mortgagors.

Mershon, who purchased at the same time with Bayles, does not allege that he paid any part of the consideration money to the mortgagee, or that there was any express understanding or agreement between him and the mortgagee that his part was to be released.

[Britton v. Updike et al.]

As regards these two purchasers, then, there is nothing to take them out of the general rule, or create any exemption in their favor.

Griggs, who purchased in 1826, sets up no agreement between him and the mortgagee as to the release of his part. He states, however, that he paid sixty dollars of the purchase money to the mortgagee, and the residue of it (eight hundred and ninety dollars) to the mortgagors; and that the sixty dollars was endorsed on the bond. By reference to the bond, which is in evidence, it appears that Griggs did actually pay sixty dollars on the bond, on the nineteeth of May, 1817, about a year after his purchase. If there was evidence of an agreement between this purchaser and the mortgagee, that his property should be released to the amount of the purchase money he paid him, there might be some claim of equity between them as to that amount. Whether it could affect in any way the rights of prior or subsequent purchasers, so as to increase their liabilities, is a point on which I give no opinion. The evidence is insufficient to warrant any interference.

The case, then, is free from embarrassment. The property in the hands of Dye is bound for the whole balance of the debt and the complainant's costs. If, after the payment of the costs, it shall be insufficient to pay the debt, the balance is to be raised out of the part purchased by Griggs; and in case that also shall prove insufficient, the shares of Mershon and Bayles must contribute in proportion to their respective values at the time of the sale.

Let it be referred to a master to take an account of the sum due on the bond and mortgage.